BEAN, (KISSINGER v.) See Case No. 7,853.

---

## Case No. 1,172.
### BEAN v. LAFLIN.
[5 N. B. R. (1873,) 333.]

District Court, E. D. Missouri.

BANKRUPTCY—PREFERENCES—INDORSERS—CONTINGENT LIABILITY.

[1. The bankruptcy act (section 35) provides that if a payment is made by an insolvent "with a view to give preference to any creditor or person — who is under any liability for him, — the person to be benefited thereby — having reasonable cause to believe such person to be insolvent, — such payment is in fraud of the provisions of this act and the same shall be void," etc. Certain persons indorsed a note for the accommodation of an insolvent, who received the whole of the proceeds of its discount; and at the maturity of the note the insolvent paid it, without the knowledge or procurement of the indorsers. *Held* that, as their contingent liability never became absolute by default in payment of the note, it was not such a liability as is contemplated by the terms of the section; and, as the payment was not thus for their benefit, they are not liable to an action by the assignee in bankruptcy, as in case of an unlawful preference.]

[Cited in Corbett v. Woodward, Case No. 3,223. Distinguished in Blair v. Allen, Id. 1,483; Sill v. Solberg, 6 Fed. 477.]

[2. Even if there had existed on the part of the indorsers such a liability as is contemplated by this section, where only one of the three indorsers had the knowledge of the maker's insolvency which was required to make them amenable to its provisions, he could not have

been forced to pay to the assignee in bankruptcy the whole face of the note.]

[Action by Bean, assignee in bankruptcy of one Kintzing, against Laflin, to recover money alleged to have been paid by the bankrupt for defendant's benefit in such wise as to constitute a preference. Heard on a motion for new trial. Motion granted.]

TREAT, District Judge. An incident pertaining to the misconduct of a juror, who, with full knowledge of the facts on the part of counsel, was discharged from the panel, has not escaped the consideration of the court. It is not presented by counsel as a ground for setting aside the verdict, inasmuch as the trial proceeded by consent; yet it indicates a condition of mind in the jury box at that time exacting more than usual scrutiny into the conduct of the cause. It may be that no other juror was affected in like manner, yet it is essential to the purity of jury trials that they should be beyond reasonable suspicion of being controlled by prejudice.

The various facts and circumstances connected with Kintzing's composition deed, whereby the same became void, it was seemingly necessary to prove in order to establish his insolvency at the date of the payment in question; and a knowledge of some one or more of those facts by the defendant seemed to be also necessary to bring home to him "reasonable cause to believe" Kintzing insolvent. It may be that the court suffered that class of inquiries to be pushed too far. It was clear from one fact established, viz.: that Brookmire and Rankin received full payment and then caused their names to be signed to the composition deed—that the deed was actually inoperative and void. Laflin knew the fact, although he may not have known its legal effect. It appeared also that all the other creditors did not assent thereto, for Hunt objected and threatened, and others state they had no knowledge thereof. The composition deed being actually void, Kintzing was insolvent. While Kintzing was proceeding under the deed as if valid, the defendant put his name, in connection with two others, on a note to be discounted for the accommodation of Kintzing. Instead of becoming joint endorsers, they became joint makers, and as between them and Kintzing were merely his sureties. If the notes were not paid at maturity, no protest and notice were necessary to fix their liability to the holder. Each of the three joint makers would then have been justly liable inter sese for one-third of the amount; and if any one of them paid the whole, he would have been entitled to contribution from the others. In that condition of affairs, Kintzing, for whose accommodation the note was made, paid the same at maturity to the holder, without consulting or referring in any way to the accommodation makers or sureties. The suit was originally by Kintzing's assignee to recover back from those makers jointly the whole amount so paid, on the ground that the payment was for their benefit and in fraud of the provisions of the bankrupt act, and that they had reasonable cause to know the insolvency of Kintzing and the fraud named. The suit now stands against Laflin alone.

Many difficulties arise as to the law of the case. It has been held by some judges that the payment before maturity by an insolvent maker of a note endorsed by a solvent person does not render the holder liable to refund, but does make the solvent endorser liable, because the payment was for "his benefit." To that ruling this court cannot assent. It is evident that the holder cannot be required to refund, for he could not refuse payment at maturity when tendered, and then protest and charge the endorser. The latter's liability is contingent, and until the note is dishonored and notice duly given, his legal liability is not fixed, and he cannot be legally called upon to pay. If, without any action whatever on his part, the insolvent maker pays the note at maturity, it is not easy to see how that payment is in a legal sense for his benefit, inasmuch as he never became legally liable to pay at all. To say that he might have become legally liable if certain contingencies had happened, which never did happen, does not alter the case. It suffices that he never was legally liable to pay, and that, through no procurement by him, his contingent never was converted into a present and absolute liability. One of the main objects of the bankrupt act, it is true, is to secure equality among creditors of an insolvent, and the law covers to some extent debts not due and existing liabilities; but it must be construed in the light of the general laws obtaining at the date of its enactment, and also of its own provisions with reference thereto. It does not contemplate that every endorser's contract shall be changed from what it was when made, merely because, by a subsequent event, viz.: the maker's insolvency, the latter cannot meet all of his obligations. That subsequent event does not of its own force convert a contingent into an absolute contract; does not dispense with non-payment, protest and notice. It is not to be held that the law merchant in that respect was designed to be thus wholly overturned. It is apparent on the other hand that if an insolvent who has outstanding obligations, secured by endorsements, can pay some and leave others unpaid, then some of the endorsers or sureties escape and others not, and thus a preference is wrought. Look at the question as we may, serious difficulties must arise; yet all that courts can do is to follow in the paths the law directs. The legal fact exists, that an endorser's contract is contingent. Until his liability is fixed according to the terms of his contract, payment cannot be exacted from him. An attempt to force him to pay what he is not

bound to pay, on the ground that without his knowledge or procurement the maker paid what he (the maker) contracted to pay, could well be met by the answer "in haec foedera non veni"—such was not my contract. This line of investigation might be pursued at great length; but enough is said to indicate the reasons which influence this court in its refusal to follow the decisions referred to. The bankrupt act is not to be construed as subversive of elementary principles pertaining to the law merchant or the universal law of contracts. except where its provisions plainly require such rulings. The thirty-fifth section enacts that if a payment is made by an insolvent "with a view to give preference to any creditor or person having a claim against him, or who is under any liability for him," "the person receiving such payment" or "to be benefited thereby," "having reasonable cause to believe such person is insolvent," and that "such payment is in fraud of the provisions of this act, the same shall be void," &c. Does that section contemplate that an endorser who never receives a dollar, and whose contingent never became an absolute liability, shall pay to the bankrupt's assignee the amount of the note paid by the bankrupt to the holder? This court cannot so hold. In one sense the endorser was benefited by the maker's payment, but not in the legal sense in which the act uses the phrase. When other sureties exist and the debt is paid by the obligor at maturity. does not the same rule apply? The sureties' obligation is contingent, and if the debt is paid, at or before maturity, without any action on their part, how can it be said that they are made absolutely or immediately liable? These remarks apply only to cases where sureties or endorsers take no action. or are innocent of all participation in any scheme by the principal debtor to contravene the law.

The case as now before the court presents still another difficulty. Where a payment made has to be refunded. no one is liable to refund unless he had "reasonable cause to believe," &c. Here were three sureties. each equally liable, contingently, and entitled to contribution, &c. One. it is contended. had reasonable cause to believe, but neither of the other two; and therefore he is bound to refund to the assignee the whole amount. His contract was, in a contingency which never happened, to pay to the creditor the amount with right of contribution from his co-sureties. If he is to be held to pay the whole, what becomes of his right of contribution? The theory is, that he has been benefited by the payment, and because he had "reasonable cause to believe," and the other sureties not, therefore they cease, prac-

tically, to be his co-sureties, and the contract, as to him, is converted into a new and distinct contract; he is made absolutely liable as sole surety on a contingent contract with co-sureties, notwithstanding the contingency never happened and he assumed no new obligation in the premises. It might well be that, knowing the maker's embarrassed condition, he was originally willing to sign the paper in connection with others and share with them the probable loss. If the maker did not pay, the three would have to contribute equally. How is he to be compelled to pay the whole, and the others to be discharged? It is said, because the maker paid the demand, and by the new rule each who had reasonable cause to believe, etc., is converted into a surety absolute, and the co-sureties innocent of such reasonable cause are alone discharged. The case must be an extraordinary one, dependent on some active participation by a surety or endorser in a debtor's fraud, to justify any such ruling. In this case the money obtained on the discount went to Kintzing and was used by him. He paid the note at maturity, without calling on his sureties. He continued in business for some time thereafter, on the hypothesis that his composition deed was valid, or would be permitted to stand. Finally it was ascertained that not only was the composition deed void. but that Kintzing could not comply with its terms. This suit is to obtain from the defendant, one of three sureties, the whole amount of a note discounted for Kintzing's benefit, and paid by him at maturity, without any interference by them to induce him so to act. The views presented by Mr. Justice Miller as to the debtor's interest. under this act, must arrest the attention of courts and possibly of congress. At any rate it does not conform to established rules of interpretation so to construe this act as to work a subversion of elementary and essential principles governing the laws of contracts. and hold parties to obligations they never assumed or contemplated; to make them also liable for acts done by others without any participation by them in the alleged wrong. Payments made after liability fixed presents a very different question. These comments are made in full view of the many difficulties to spring up from whichever rule of construction is adopted. As the rulings at the trial were not in accord with these views, a new trial will be granted.

[For other cases involving this bankruptcy, see Bean v. Amsinck, Case No. 1.167: Bean v. Brookmire. Cases Nos. 1,168–1,170: Brookmire v. Bean, Case No. 1,942; Kinsing's Assignee v. Bartholew. Id. 7,831; In re Kintzing, Id. 7.833.]